trustees, as they claimed, to be, then a court of equity unquestionably had jurisdiction, and the plaintiff had no adequate remedy at law; and if they were usurping the duties of a testamentary trustee, under an erroneous construction of the will, and were keeping the plaintiff out of her right of possession, it is difficult to understand why, under the pleadings, it was not proper for the court to determine the question of law, and to grant the proper relief. There could be no dispute of fact as to the provisions of the will. It presented purely a question of law as to the proper construction, and no material rights of the defendants are involved in the mere technical question of whether the law was determined by a court in its equitable capacity or as a trial court.

On the question of costs, we see no reason for modifying the judgment. The plaintiff was entitled to immediate possession of her property. The defendants unlawfully withheld the property from her, and why the costs of this action, necessary to secure the plaintiff's legal rights, should be taken from the decedent's estate, to the wrong of this plaintiff and others, who are not parties to this action, does not appear. The defendants, as executors, had no duties to perform in connection with the High street property; and they, having insisted upon a right to act to the disadvantage of the plaintiff and in violation of her legal rights, were acting personally, and not as executors, in refusing to give possession of the property, and they are properly chargeable with costs individually. Section 3246, Code Civ. Proc. Buckland v. Gallup, 105 N. Y. 453, 11 N. E. 843. The defendants do not appeal from the conclusions of law involved in the judgment, in so far as it relates to the rights of the plaintiff in the High street premises. This is a concession that their possession of the property was illegal, and as the plaintiff is entitled to costs from some one, and the estate is not legally chargeable for the illegal acts of executors, there is no other place for the burden to fall than upon those who have by their misconduct made the action necessary.

The judgment and order appealed from should be affirmed, with costs. All concur.

---

EAST RIVER NAT. BANK v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. April 15, 1904.)

1. MUNICIPAL CORPORATIONS—NEW YORK CITY—CONSOLIDATION—LIABILITY OF CONSTITUENT MUNICIPALITY—STREET IMPROVEMENTS—IMPROVEMENT BY BOARD OF COMMISSIONERS—STATUTORY CONSTRUCTION.

Laws 1878, p. 488, c. 410, as amended by Laws 1880, p. 456, c. 318. and as further amended by Laws 1881, p. 447, c. 326, provided for the opening and improvement of a certain avenue in Long Island City, and appointed commissioners under whose direction the improvement was to be made. The commissioners were directed to issue certificates, receive money realized from the sale thereof, and disburse it, and an assessment was provided for from which the expenses of the improvement were to be paid. The duty was imposed on the treasurer of Long Island City to receive the amount of the assessment and keep it in a separate account, distinct from all city moneys, and apply it to the payment of the certificates, and he was required to give a bond for the faithful performance of such duty. Laws 1897, p. 3, c. 378, § 4, relative to the consolidation of various munic-

ipalities in the city of Greater New York, imposed on the new city a liability for all valid charges against any of the public corporations consolidated; and section 9, p. 5, provided that all funds which on the 1st day of January, 1898, should be payable to any officer of any corporation consolidated should be deemed payable to the city of New York. *Held,* that the statute relative to the improvement of the avenue did not constitute the commission an "organized board of Long Island City," or create any liability on the part of the city on the certificates, and hence the city of New York was not liable on such certificates because of the consolidation, which included Long Island City.

Van Brunt, P. J., dissenting.

Appeal from Trial Term.

Action by the East River National Bank against the city of New York. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Rollin M. Morgan, for appellant.
George L. Sterling, for respondent.

INGRAHAM, J. The action is brought to recover from the defendant, the city of New York, the amount of certain certificates of indebtedness issued by commissioners to open, widen, and improve Flushing avenue, under chapter 410, p. 488, of the Laws of 1878, amended by chapter 318, p. 456, of the Laws of 1880, and further amended by chapter 326, p. 447, of the Laws of 1881. These certificates are dated November 1, 1882, were signed by the commissioners, countersigned by the treasurer and receiver of taxes of Long Island City, with the seal of the Flushing Avenue Improvement Commission. The complaint alleges that the Flushing Avenue Improvement Commission was a duly organized board of Long Island City, established and existing under the acts of the Legislature specified. This act, as amended (Laws 1881, p. 447, c. 326), provides that certain persons named are appointed commissioners, "without compensation, to open, widen and improve from Van Alst avenue to the easterly boundary line of Long Island City. Said commissioners and their successors shall be known as the 'Flushing Avenue Improvement Commissioners.' They shall act as a board of commissioners, and shall keep minutes of all their meetings and proceedings," and any vacancy existing may be filled by the remaining commissioners. By section 2 of the act the commissioners were authorized to widen Flushing avenue to the full width and extent of 80 feet, to curb and flag said Flushing avenue, to lay bridge stones across all intersecting streets and avenues, to construct any and all sewers, culverts, etc., along, under, and across said Flushing avenue, to cause suitable shade trees to be planted at proper distances along said avenue on each side thereof, and to pave or macadamize said Flushing avenue within said limits and to the full width of the roadway, within three years after the 1st day of June, 1881. By section 3 the commissioners were authorized to acquire lands necessary for opening or widening the avenue. By section 4 all work to be done and all materials requisite to be furnished therefor were to be done and furnished by contract or contracts founded on sealed

bids or proposals made on public notice by advertisement; and it was provided that:

"Any contractor failing to perform his contract, or any part thereof, shall be liable to said commissioners for any damage caused by such failure, and said commissioners shall have full discretionary power, in the interest of the property owners in the prosecution of the improvements in their dealings with the contractors, to enforce their rights against contractors by action or otherwise, to the end that said improvements may be completed in the most speedy, advantageous and economical manner."

### Section 5 provided that:

"In order to pay for the several improvements authorized or directed by this act, inclusive of such widening, together with the incidental expenses of making such improvements, said commissioners are hereby authorized and empowered to issue certificates of indebtedness in an amount not to exceed in the aggregate the sum of one hundred and fifty thousand dollars. Said certificates shall be known and designated as the 'Flushing Avenue Improvement Certificates' and may be issued in direct payment for such improvements, and expenses, or they may be sold or negotiated by the commissioners to obtain money to pay for such improvements, or any part thereof, as said commissioners may deem most advantageous. * * * The commissioners shall determine the form and denomination of such certificates, except that they shall be payable to bearer, shall pass by delivery, shall bear interest at a rate not exceeding six per centum per annum, payable semiannually on the first day of February and August in each year, shall be redeemable out of the 'Flushing Avenue Improvement Fund,' and shall be redeemable after five years and payable in any event in ten years from their respective dates, shall be receivable at all times at par and accrued interest in payment of any assessments hereby authorized, or of the interest thereon, and, also, except that it shall appear upon said certificates that they issued under the provisions of this act. They shall be signed by said commissioners, or a majority of them, and countersigned by the treasurer and receiver of taxes of Long Island City, on the written requisition of said commissioners or a majority of them. * * * In case a sufficient amount of the assessments to be levied under the provisions of this act shall not be paid to the treasurer and receiver of taxes of Long Island City, to enable him to meet and pay the first six months' interest accruing upon any of such certificates which may have been issued from time to time by said commissioners, or any part thereof, the said treasurer and receiver of taxes shall certify the fact in writing to said commissioners, stating the amount necessary to pay or make up in any deficiency in the payment of such interest, and thereupon said commissioners shall forthwith proceed to issue such an amount in such certificates as will make up and pay such deficiency of interest, and shall sell or negotiate the same as hereinbefore provided, and shall pay over the proceeds thereof to such treasurer and receiver of taxes, and such certificates so issued shall be issued and negotiated in the same manner and upon the same terms and conditions, and shall bear the same rate of interest as the improvement certificate hereinbefore provided for."

Section 7 of the act directs the commission to proceed as soon as practicable to widen said Flushing avenue, and to assess therefor the cost of the improvement authorized or directed to be made by the act, and that such assessment shall be levied upon and be a lien upon the property upon which it was imposed, and "a just and valid assessment may be levied and collected therefor, so that the entire cost, charges and expenses of such widening and improvements may be defrayed out of and with the proceeds of said assessment, and from and after the time such assessment shall have been duly made, confirmed and filed in the office of the treasurer and receiver of taxes of Long Island City the amount so assessed upon each lot, piece or parcel

of land shall be a lien thereon," and "payment of the principal and interest of such assessments may be enforced in the same manner, by the same means, to the said extent, with the same force and effect, and within the same time or times after the filing of such assessment roll in the treasurer's office of Long Island City, as is provided in regard to other assessments levied under the provisions of this act." Section 8 provides for the district of assessment for the opening, widening, and improvement, and enacts that every assessment levied under the provisions of the act shall be a lien upon the real estate upon which the same shall be charged or levied from the time of the confirmation thereof and the delivery of the assessment roll to the treasurer of Long Island City; that any assessment levied under the provisions of the act may be paid to the treasurer and receiver of taxes of Long Island City without fee or charge at any time within three months after the assessment roll therefor, or a certified copy thereof, shall be filed in the said treasurer's office; but—

"All lots, pieces or parcels of land upon which any assessment shall remain unpaid, and upon which assessment there shall be three years' interest or more unpaid on the first day of July in any year, or upon which assessment or interest, or any part thereof, shall remain unpaid after the expiration of eight years after such assessment shall have been confirmed and the assessment roll thereof, or a certified copy thereof, filed in the office of the treasurer and receiver of taxes of Long Island City, shall be advertised and sold for the payment of such unpaid interest or assessment, or both, as the case may be, and such sale or sales shall be made by the treasurer and receiver of taxes of said city, or such other officers as shall then be authorized by law to sell lands situate in said city for nonpayment of city taxes, and such sale or sales and all proceedings therefor and thereafter shall be the same, and on the same notice and like terms and subject to the same conditions, provisions and restrictions, and the several lots or parcels of land or property sold may be redeemed, and in default of such redemption, title thereto shall be perfected and given in the same manner, to the same extent, with the same force and effect, and the costs, fees, charges and expenses of such sale shall be the same as shall then be prescribed by law for the sale of lands situate in said city for the non-payment of city taxes in said city. At the sale of any lot, piece or parcel of land for nonpayment of said assessments, or any of them, or interest thereon, as hereinbefore provided, it shall be the duty of the officer making such sale, to receive the said improvement certificates, authorized by this act, at par and accrued interest in payment for the assessments, or any of them, and the accrued interest thereon, for which such sale shall be made, exclusive of the costs and expenses of such sale, in the same manner, to the same extent and with the same force and effect; and such certificates when so received, shall be permanently and effectually cancelled and defaced and deposited with the same office."

Section 9 provides that:

"All moneys received by said treasurer and receiver of taxes in payment of such assessments or interest shall be placed to the credit of a fund to be known as the 'Flushing Avenue Improvement Fund,' and shall be kept separate and apart from all other moneys in his hands, and no part thereof shall be expended by him except in payment of the interest or for the purchase or redemption of the principal of said Flushing avenue improvement certificates, or such additional certificates as hereinbefore provided, until the same shall be fully paid, purchased or redeemed, with interest as aforesaid. * * * Whenever the treasurer of said city shall have five hundred dollars or more in his hands to the credit of said Flushing avenue improvement fund not required for the redemption of such additional certificates, or for the next semiannual interest payment on outstanding improvement certificates, he shall give public notice, by advertisement for at least one week

in one or more newspapers published in Long Island City that he will receive sealed proposals for the sale and surrender to him of such certificates," and such notice shall specify the amount in his hands to be then applied to the purchase of such improvement certificates. "In case the amount of improvement certificates so advertised for shall not be purchased pursuant to said advertisement, said treasurer is hereby authorized to call in the amount so advertised for, or the residue thereof as nearly as may be, not so purchased, by public notice, by advertisement to be published in one or more newspapers published in Long Island City, once a week for two consecutive weeks which notice shall specify the number, par value and date of each certificate so called in and shall require the same to be presented at his office for redemption. * * * When all of said assessments shall have been paid with interest thereon, or upon the completion of the sales for the nonpayment thereof, all the said improvement certificates shall be paid off. Final notice of the redemption of such certificates, by advertisement to be published in one or more newspapers, published in Long Island City, once a week for two consecutive weeks, shall be given by said treasurer, requiring all outstanding certificates to be presented at his office for redemption.. * * * If there shall be any excess to the credit of said improvement fund, after the payment and redemption of such certificates, it shall be covered into the city treasury in payment of city taxes, upon the property assessed hereunder in proportion to the total amounts assessed thereon, respectively."

Section 11 of the act provides that:

"The treasurer and receiver of taxes of Long Island City and his sureties shall be liable on his official bond given to said city, after the passage of this act for the faithful discharge of the several duties hereby imposed upon him, and for all moneys which shall come into his hands under and pursuant to the provisions hereof. Prior to the giving of such security, a temporary bond may be required by said improvement commission in form and amount approved by them, conditioned that said treasurer will faithfully account for, apply and pay over all money which shall come into his hands under the provisions of this act."

I have called attention to the provisions of this act, to show that the commission was not "a duly organized board of Long Island City," and that there was no duty in relation to this improvement imposed upon the city. The Legislature by the act specified the improvement to be made, and appointed commissioners under whose direction such improvement was to be made. To provide the necessary money, the commissioners were directed to issue the certificates, to receive the money realized therefrom, and to disburse it; and an assessment was provided for, from which the certificates issued by the commissioners were to be paid, and the duty was imposed upon the treasurer of Long Island City to receive the amount of the assessment, when paid by the owners of property upon which the assessment was imposed, which he was directed to keep in a separate account, distinct from all city moneys, and apply to the payment of the certificates issued by the commissioners; and to insure the performance of that duty he was required to give a bond, and the money so received was to be solely applicable to the payment of the certificates issued. There is no provision of this act which in express terms makes the city liable for the payment of these certificates. The provision directing the sale of the property does not impose a duty upon the city to make such sale. It directs that such property, upon which an assessment shall remain unpaid, after the expiration of eight years from the confirmation of the assessment, shall be advertised and sold for the payment of such unpaid interest or assessment, or both, as the case may be; and such sale

or sales were directed to be made by. the treasurer and receiver of taxes of said city, or such other officer as should then be authorized by law to sell land situate in said city for the nonpayment of city taxes. Here, again, the officer who is to make such sale is designated by the Legislature, and in making such sale he would act under this specific power given to him by the Legislature, and not by virtue of any authority that he had as an officer of the city; and then, in case there should be any excess of the amount necessary to pay the certificates, the amount is not to be paid over to the city, for its benefit, but is to be applied to the reduction of the payment of taxes upon property that had been assessed for the improvement by the legislative mandate. The sole duty that rested on any city official was that which was imposed by the act upon the officer, not as a corporate officer, but as a person designated by the act to perform the duties prescribed by the act.

When the city of New York was consolidated with the other municipal corporations in what was called the "Greater New York," there was imposed upon the new city created a liability for "all valid and lawful charges and liabilities now existing against any of the municipal or public corporations or parts thereof which by this act are made part of the corporation of the city of New York, * * * which but for this act would be valid and lawful charges or liabilities against the same," and such charges "shall accordingly be defrayed and answered unto by it to the same extent and no further than the said several constituent corporations would have been bound if this act had not been passed." Section 4, c. 378, p. 3, Laws 1897. Section 5 provides that:

"All laws or parts of laws heretofore passed creating debt or debts of the municipal and public corporations, united and consolidated as aforesaid, or for the payment of such debts, or respecting the same, * * * shall remain in full force and effect, except that the same shall be carried out by the corporation hereby constituted, to wit, the city of New York. * * * All of the valid debts of the municipal and public corporations mentioned in the first section of this act * * * shall be the common debt of the city of New York, as hereby constituted."

Section 9, p. 5, provides that:

"All funds and moneys which, on the first day of January, 1898, shall be held by or be payable to * * * any officer of any of the municipal and public corporations, or parts of municipal and public corporations, hereby consolidated with the corporation heretofore known as the mayor, aldermen and commonalty of the city of New York, as well as all funds and moneys then held by or payable to any officer of said last named corporation, shall be deemed to be held by and be payable to the corporation of the city of New York, constituted by this act."

These provisions carefully restrict the obligation which is imposed upon the city of New York to the debts or obligations of the various municipal corporations that are included in the city thereby created. There is no provision of the charter that I have been able to discover, or to which our attention has been called, which imposes upon the city of New York a liability for an indebtedness created or authorized by the Legislature which is not made an obligation of one of the municipalities which were consolidated into the city of New York.

Section 9 of the charter, to which attention has been called, providing as to all funds and moneys which on the 1st day of January, 1898, shall be held by or be payable to any officer of any of the municipal and public corporations consolidated, evidently applies to the moneys of the constituent corporations, or moneys due to such corporations and payable to their officers. Here no part of these assessments ever became payable to Long Island City, nor could they in any way be applied for its benefit. The municipal corporation had no control over the proposed improvement, the receipt or expenditure of the money raised to carry out the improvement, or the receipt or application of money realized from the assessment which the commissioners imposed for the improvement.

The only fact that connects Long Island City in any way with the improvement is that it would appear that the avenue to be improved, or a part of it, was within the corporate limits, and the treasurer of the city was designated as the fiscal officer who was to receive the amount of the assessments, when paid, and apply it as directed in the act. It seems to me clear that the Legislature imposed no obligation upon the municipal corporation which could be enforced by action to pay for these certificates, and no such obligation was imposed upon the defendant when the new city was created.

It is not necessary to determine upon this appeal whether or not the defendant would be responsible for a failure of the city treasurer of Long Island City to sell the lands upon which an assessment had been imposed as directed by the act. I should have serious doubts as to whether the city of New York would be responsible for any default of the treasurer before the 1st of January, 1898, when the defendant was created. The theory upon which the action was brought was that the commission was a duly organized board of Long Island City, and that city was bound to pay these certificates when they became due, and, that obligation having existed at the time of the consolidation of the various cities into the city of New York, it was transferred to the defendant by the provisions of the charter, and thereby the defendant became liable to the holders of the certificates. I can find no warrant for such a claim. None of the cases cited by counsel for the plaintiff have any application. There is a clear distinction between the cases where the city is directed to make the improvements, to enter into contracts therefor, and to issue obligations to provide the money to pay for the work done, and is authorized to impose assessments to reimburse itself for the money thus expended, or which it had become obligated to pay, and this case, where the city had nothing to do with the improvement, and incurred no obligation therefor.

I think, therefore, that the complaint was properly dismissed, and that the judgment should be affirmed, with costs.

PATTERSON, McLAUGHLIN, and HATCH, JJ., concur. VAN BRUNT, P. J., dissents.